966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus BETANCOURT a/k/a Jesse Betancourt, Defendant-Appellant.
 No. 91-2028.
 United States Court of Appeals, Sixth Circuit.
 June 18, 1992.
 
 Before MERRITT, Chief Judge, MILBURN, Circuit Judge and JOHN W. PECK, Senior Circuit Judge
 MERRITT, Chief Judge.
 
 
 1
 Defendant pled guilty to two counts of possession with intent to distribute cocaine and distribution of cocaine. The District Court sentenced defendant to 236 months in prison based on the finding that defendant was a career offender under U.S. Sentencing Guidelines § 4B1.1. Defendant challenges his conviction, claiming that the District Court erred when it denied a motion to suppress cocaine found in a warrantless search of the home of defendant's ex-wife. Defendant also challenges his Guidelines sentence. Finding no error either in the admission of the evidence or in the calculation of defendant's sentence, we affirm the judgment of the District Court.
 
 I. Facts
 
 2
 After an informant purchased one-eighth ounce (approximately 3.5 grams) of cocaine from Jesse Betancourt in a controlled sale, a Magistrate authorized an arrest warrant for Betancourt and a search warrant for Betancourt's home. A local SWAT team accompanied FBI agents and Michigan narcotics officers in a raid on Betancourt's residence at 4025 Hess in Saginaw, Michigan on December 19, 1990. Betancourt was not at the Hess Street residence, but the officers did discover a handgun in the kitchen.
 
 
 3
 Aware that the defendant occasionally stayed at 19990 Swan Creek Road, the home of his ex-wife, the raid team proceeded to that address. Members of the team observed three or four cars in the driveway including the truck frequently driven by Betancourt. At about 8 a.m., several officers entered the residence through an unlocked door. An FBI agent called out for Betancourt. The defendant emerged in his pajamas from an upstairs bedroom and appeared at the top of the stairs. He quietly complied with the agent's instructions to come down the stairs where he was immediately placed under arrest and handcuffed.
 
 
 4
 The FBI agent then told the other officers to sweep the residence to see if anyone else was present. During this search, two officers found a jar containing five ounces (approximately 142 grams) of cocaine on top of a bureau in the defendant's bedroom. After the sweep, the officers retrieved some clothing from defendant's bedroom, asked him to dress, and removed him from the Swan Creek residence.
 
 
 5
 The agents secured the premises and began the process of obtaining a search warrant. In the meantime, the defendant's ex-wife returned to the premises and signed a consent to search. During the search, the officers found drug paraphernalia and two bullet proof vests. Based on the cumulative evidence, defendant was eventually charged with and pled guilty to possession with intent to distribute and distribution of cocaine.
 
 II. The Warrantless Search
 
 6
 The District Court ruled that the warrantless search of the home in which the defendant was apprehended was proper as a protective sweep or search incident to arrest under Maryland v. Buie, 110 S.Ct. 1093 (1990). Alternatively, the District Court held that the evidence was admissible under the inevitable discovery doctrine because the arresting officers would have found the cocaine when they retrieved Betancourt's clothes from his room. Because we agree that the evidence was admissible under the inevitable discovery doctrine, we do not reach the question of whether the search was proper under Buie.
 
 
 7
 Under the inevitable discovery doctrine, evidence obtained unlawfully will not be suppressed if the government can prove that the evidence inevitably would have been obtained through lawful means. Nix v. Williams, 467 U.S. 431 (1984). Here the defendant was wearing only his pajamas when he was apprehended. He had no shoes or coat, and it was a chilly December morning. The agents asked the defendant where his clothes were, and he responded that they were in his bedroom, the same room where the agents earlier had discovered the cocaine. The agent testified that standard procedure in such a case was either to search the room to ensure that there were no hidden weapons then allow the defendant to reenter and dress there, or, as was done here, to retrieve the clothes and allow the defendant to dress elsewhere prior to transporting him. Because the agents had a lawful reason to enter the bedroom under these circumstances, and because the cocaine was in plain view on the defendant's bureau,[1] we hold that the District Court did not err by denying defendant's motion to suppress the evidence.
 
 III. Sentencing Objections
 
 8
 The defendant claims that he was improperly sentenced as a career criminal under Guidelines § 4B1.1.[2] We find that defendant's criminal record provides ample justification for his sentence as a career criminal.
 
 
 9
 Defendant's prior criminal convictions are as follows:
 
 
 10
 1. 11/08/69 Carrying a Concealed Weapon
2. 01/01/73 Assault with a Dangerous Weapon
3. 10/18/78 Delivery of Heroin
4. 10/11/79 Delivery of Heroin
5. 01/09/80 Delivery of Heroin
 
 
 11
 Both parties agreed that the 1969 conviction does not affect defendant's criminal history calculation as it does not fall within the fifteen year applicable time period. Guidelines § 4A1.2(e)(3). The parties dispute the impact of the defendant's remaining convictions.
 
 
 12
 At the sentencing hearing, defendant argued that his 1974 conviction is more than fifteen years old and thus does not fall within the applicable time period. He also argued that the three heroin convictions are related and should be treated as one sentence for purposes of his criminal history under Guidelines § 4A1.2(a)(2). On appeal the defendant argues that the District Court erred by refusing to consolidate his convictions for heroin.
 
 
 13
 Under Guidelines § 4B1.1, Betancourt is a career offender if (1) he was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. The first two criteria are not at issue. To win on the third argument, Betancourt must show both that the three heroin convictions should be counted as one and that the assault conviction is not includable in Betancourt's criminal history calculation. We find that defendant's prior convictions for assault and each of his prior convictions for delivery of heroin were properly included in the calculation of defendant's criminal history.[3]
 
 
 14
 Section 4A1.2(e)(1) of the Guidelines states:
 
 
 15
 Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, when ever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.
 
 
 16
 Defendant was sentenced for his assault conviction on January 30, 1974, and remained in prison until his parole on July 28, 1975. The instant offenses were committed on December 12 and December 19, 1990. Although defendant's original release on the assault conviction was more than fifteen years prior to his commission of the instant offense, defendant was returned to custody as a parole violator on the assault conviction on August 13, 1976.
 
 
 17
 Guidelines § 4A1.2(k)(2) states that "[r]evocation of probation, parole, supervised release, special parole, or mandatory release may affect ... the time period under which certain sentences are counted as provided in § 4A1.2(e)(1)." The District Court held that the revocation of defendant's parole caused his release from imprisonment on the assault charge to occur within the applicable fifteen year time period and, therefore, that the assault conviction is properly includible in defendant's criminal history calculation. Although the Guidelines are not specific about the effect a revocation of parole will have on the time period under which sentences are counted, the District Court's interpretation is consistent with § 4A1.2(e)(1), which states that a prior sentence should be counted if the defendant was "incarcerated during any part of such fifteen-year period."
 
 
 18
 With respect to defendant's convictions for distributing heroin, he argues that the three convictions should have been treated as one under § 4A1.2(a)(2). This section instructs the sentencing court that "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history."
 
 
 19
 Defendant's argument that the three heroin convictions are related is unsupported by the record, especially in light of the amount of time that passed between offenses. The first occurred on May 16, 1978, the second on June 14, 1979, and the third on October 10, 1980. Betancourt was actually arrested for the first delivery on October 18, 1978, but became a fugitive from justice until he was later arrested for the subsequent offenses. Convictions are not related under § 4A1.2(a)(2) simply because they are for committing the same crime if on separate occasions. Thus the defendant's convictions for heroin were properly included in the calculation of his criminal history and support a finding that he is a career criminal within the meaning of the Guidelines.
 
 IV. Conclusion
 
 20
 In sum, we hold that the District Court committed no error by refusing to suppress the cocaine discovered by officers in defendant's bedroom. We also hold that defendant was properly sentenced as a career offender. Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 At his plea, defendant asserted that the jar of cocaine was not in plain view, but contained in a brown paper bag. He makes the same claim on appeal. The defendant did not counter testimony at the sentencing hearing that the cocaine was in plain view on the bureau. Thus, the factual challenge was not timely made and we need not consider it now
 
 
 [2]
 Defendant also argues that the Court erred by assessing two points for possession of a firearm under § 2D1.1(b). The second claim is moot unless the defendant succeeds on the first. The two points for the firearm had no effect on his sentence since he was sentenced as a career criminal. Furthermore, defendant did not challenge the points assessed for the firearm at trial. Consequently, that claim is procedurally barred
 
 
 [3]
 The defendant points out that the Michigan Court of Appeals later overturned the defendant's heroin conviction based on the June 1979 delivery. Sentences resulting from convictions that have been reversed or vacated because of errors of law are not to be counted in the calculation of a defendant's criminal history. Guidelines § A1.2, Application Note 6. Counsel for the defense, however, acknowledges that he did not discover that the conviction had been overturned until he began preparing defendant's appeal. Thus, the defendant never challenged inclusion of the invalid conviction in the District Court. Moreover, to remove the relevant conviction from consideration would not affect the defendant's categorization as a career offender